

Christopher Egli
147 Conestoga Rd.
Devon, PA 19333
Christopher28fair@msn.com
610 990 5408

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christopher Egli<br>147 Conestoga Rd.<br>Devon, PA 19333<br>610 990 5408 | )<br><br>)<br><br>) | CIVIL ACTION |
| Plaintiff, Pro Se<br>v. | )<br><br>) | NO. **16  3693** |
| George Strimel<br>47 Louella Court<br>Radnor, PA 19087, | )<br><br>) | |
| John C. (Jack) Brooks<br>110 W Lancaster Ave<br>Wayne, PA 19087 | )<br><br>) | |
| Radnor Studio 21<br>110 W. Lancaster Ave<br>Wayne, PA 19087, | )<br><br>) | Jury Trial Requested |
| Radnor township<br>301 Iven Ave.<br>Wayne, PA 19087 | ) | |
| Defendants. | | |

## BACKGROUND

1.   Christopher Egli, plaintiff, is a writer and filmmaker living in Devon Pa, and a longtime participant at RS21, Radnor township's Public Access studio.

2.   George Strimel, defendant, is the General Manager of RS21 and a state actor.

3.   Radnor Studio 21, or RS21, is a Public Access TV station in Wayne, Pennsylvania, and a state actor.   .

4.   John C. Brooks is the chairman of RS21's Board of Directors,  and a state actor.

5.   RS21 and Radnor township are participants in two Franchise agreements setting forth terms and conditions by which RS21 operates, under the Cable Communications Act of 1984 and 47 U.S.C. § 531.

6.   The RS21 annual budget for 2012 was $179,000, and the salary of RS21 general manager of RS21 George Strimel for that year was $75,100.

7.   Public Access television is not PBS, and has nothing to do with PBS, or Public Television.  Public Access television was established by Congress to give individuals a public forum to express their views on the cable television channels broadcasting in their communities.

8.   Plaintiff Egli has never been accused of any impropriety of any kind with regard to RS21, or any other entity.  Plaintiff has gone out of his way to act with professionalism and courtesy throughout his association with this Public Access channel.

## STATEMENT OF FACT

1  On or about May 27th, 2016, plaintiff Christopher Egli went to the RS21 studio to submit his new film "Americans Risking Everything" for airing on the RS21 TV channel. Present at the studio were RS21 Operations manager Brian Farrell and RS21 employee Giulia Hedley. Farrell accepted the film and handed Mr. Egli the RS21 'release' form, which Mr. Egli filled out, signed, and handed back.

2  About a week later, Mr. Egli received an email from RS21's attorney, claiming that the Operations manager had provided the wrong release form, and demanding that the plaintiff fill out a different form. (Exhibit A) The attorney stated that Mr. Egli's film would not be considered for airing until the new form had been signed and submitted. Plaintiff Egli did not sign the new form.

3  The two release forms are materially different; the new form includes a paragraph stipulating that all costs associated with any legal action against RS21 would be borne by the person signing it. The form was evidently written in haste, because the relevant sentence omits a key word, reading as follows;

4  "In the event the Producer files suit against Radnor Studio 21 and/or any of its employees, in the event Radnor Studio 21 and/or its employees is successful in said lawsuit, the producer agrees all of Radnor Studio 21 Inc.'s legal fees and costs incurred in defending the lawsuit." (sic)

5  Presumably, the writer of this paragraph meant to write "agrees *to pay*... all of...." but that is not what's written in the release form. The sentence as written is incoherent and meaningless, and even if the plaintiff had signed it, would mean nothing.

1

6  The fact that both the RS21 Operations manager and RS21 employee Hedley were unaware of the new release form, and the fact that the new form contained a glaring error in its key sentence,  suggests that the form was quickly drawn up *after* the plaintiff submitted his film, with the sole intent of denying him the right to air his films on RS21.

7  The new release form was certainly written for this plaintiff, with two motives; to thwart him from exercising his 1st amendment rights, and to punish him, for reasons to be discussed shortly.

8  In addition to demanding the plaintiff sign the new form, the defendants also sent a letter to the plaintiff penned by the chairman of RS21's Board of Directors, setting forth several other new conditions applying solely to Mr. Egli.  (Exhibit B) These conditions immediately revoked Mr. Egli's right to participate at RS21, forbade Mr. Egli from going to the RS21 studio, forbade Mr. Egli from contacting any RS21 employee,  and forbade Mr. Egli from being on the property of RS21, which  "will be considered both a threat and criminal trespassing".

9  Brooks also wrote that he had notified the Radnor Police Department that the plaintiff should be considered a 'threat', along with the new restrictions suggesting the plaintiff should be regarded as a danger to RS21 personnel, participants, and staff. Brooks then CC'd this letter containing his accusations to the Honorable Judge Wendy Beetlestone in Philadelphia federal court.

10  It's important to note that by asserting as he does that RS21 is revoking the plaintiff's right to continue participating at RS21,  effective June 7th, defendant Brooks acknowledges that the plaintiff was a participant in good standing at RS21

2

prior to that date. The decision to revoke his privileges and to establish the other punitive measures was made *after* the plaintiff submitted his new film, in retaliation for doing so.

11   To justify the demands in the Brooks letter, RS21's attorney conjured up a feeble, unsubstantiated accusation that some time in the past, the plaintiff had not properly followed the procedure for submitting a film to RS21. Besides being a falsehood, there was no justification for the hostile and unwarranted measures suddenly put in place against the plaintiff, no justification for notifying the Radnor police, and no justification for communicating to them that plaintiff Egli was a supposed 'threat'. There was absolutely no justification for copying the Honorable Judge Wendy Beetlestone with these defamatory allegations; the defendants' only motive there was to libel and defame the plaintiff in federal court.

## APPEAL PROCESS DENIED

12   According to the RS21 "Operating Policies and Procedures" manual, any RS21 producer has the right to appeal a decision not to air a program, a step this plaintiff would have taken, had it been possible. But by retroactively demanding that the plaintiff resubmit his film, the defendants foreclosed that avenue. The defendants established a 'catch-22' circumstance in which the plaintiff could not appeal the decision because, according to them, his film had not yet been submitted. Yet the defendants had in their possession a properly submitted

3

release form that their own Operations manager had provided to the plaintiff.

13   Consistent with their actions beginning in 2012, when Strimel and RS21 refused to air the plaintiff's earlier films, the defendants have used - and abused - their powers as state actors to deny this plaintiff his 1st amendment rights. The reason? Because Mr. Strimel, et al, did not like the political content in the plaintiff's films, and were not about to let him voice his opinions on RS21.

14   The email from the RS21 attorney, with its demand that the plaintiff fill out the newly created release form, along with the defamatory letter from defendant Brooks, together represent a targeted hostility; they are part of a continuing pattern of animosity and bad faith aimed at this plaintiff since 2013.

## PLAINTIFF ALLEGES 42 USC 1983 VIOLATION

15   Plaintiff alleges that Strimel and RS21 have denied him his 1st amendment rights as provided under 42 USC 1983 and 47 USC 531(e); by refusing to air his film, by arbitrarily and capriciously changing the procedure for submitting films, and by establishing conditions that were punitive in intent and designed specifically to impede and harass this plaintiff. The defendants took the actions they did to prevent the plaintiff from participating at RS21 and to deny him the ability to show any of his films on the RS21 channel.

16   The plaintiff would like to draw the court's attention to another aspect of this Complaint; the settlement agreement that was drawn up at the conclusion of a lawsuit the plaintiff filed in 2013 against these same defendants. As part of that

4

agreement, Mr. Egli was entitled to continue to submit films to RS21, which films were to be treated the same as those of any other RS21 producer. Those conditions have been in force since they were written, and were in force when the plaintiff dropped off his new film at RS21 May 27th. They were, and are, utterly unchanged by the plaintiff's 2014 lawsuit, regardless its outcome. This plaintiff had every right to return to RS21 with new films after the conclusion of his recent lawsuit, as he did. The plaintiff should have had no reason to fear retribution nor retaliation for seeking to exercise his 1st amendment rights. Instead, he was greeted with hostility, defamatory statements, retroactively created barriers to his participation, and toxic bad faith.

17   The fact that the plaintiff's Complaints involve the same parties and the same 1st amendment issues should be of note only because they show a continuing pattern of unlawful actions on the part of state actors Strimel and RS21. The defendants evince no respect for the plaintiff's 1st amendment rights, let alone the 1st amendment itself, but continue to deliberately flout the law.

ADDITIONAL CLAIMS

Civil Conspiracy,  False Advertising

18   The Franchise Agreement between RS21, Radnor township, and either Verizon Pennsylvania or Comcast Corporation was created in the late 1980's and updated August 14, 2006 under the Cable Communications Act of 1984, 47 U.S.C. § 531.

5

19    The plaintiff will first enumerate several factors establishing the working

relationship between Radnor township and RS21:

As a starting point, nearly all of RS21's IRS documents and IRS filings list the

address of RS21 as "301 Iven Avenue, Wayne, PA", which is the address of Radnor

township, not RS21.  RS21 is located at 110 W Lancaster Ave, Wayne, PA.

20    George Strimel, the General manager of RS21, reports to Radnor township at

regular intervals, answering questions before the Cable, Web, and

Communications committee at the Radnor township building.  Strimel has

reported to Radnor township since he was hired as general manager in 2000.

21    In addition,  In the course of discovery for the plaintiff's 2014 Complaint, the

attorney for Radnor township refused to comply with the plaintiff's RPD

[requesting documents] between RS21 and Radnor township because, according

to the attorney, "more than a thousand" emails turned up.  Even without knowing

the content of these emails,  the sheer volume and number of exchanges

establishes that Radnor township and RS21 have extensive ties and conduct

business together in the operation of RS21.  The Radnor's attorney's refusal to

respect a subpoena confirms these business ties;  he would surely have had no

reason to object if the thousand + documents were all Christmas greetings.

22    More importantly, the bulk of RS21's funding comes from Radnor township,

as a 'tax' paid to it by its two Franchise partners, Verizon and Comcast. A number

of lower court rulings have established this as a deciding factor for demonstrating

that Public Access studios are 'state actors',  a finding confirmed by the *Supreme

Court of the United States*. [referenced elsewhere in this Complaint]  Were RS21

6

truly 'independent', as claimed, funding would be wired directly from Verizon and Comcast to RS21, rather than to Radnor township.

23  Judge Wendy Beetlestone was assigned to the plaintiff's 2014 Complaint in early 2016.  In an Opinion deciding a 'Motion for Summary Judgment', filed April 8th, 2016, Judge Beetlestone cited Radnor's Franchise agreement as follows;

"[Radnor] *Township shall have <u>complete control</u>' over the content, scheduling, and administration of the PEG channels," [which includes RS21.]"*

And,

24   *"The [Franchise] agreements further specify that the township's "Public Access TV channel" is RS21.*

Judge Beetlestone also confirmed the connections between Radnor and RS21, noting that the two entities work together to operate RS21.

25   The franchise agreements between Radnor and Verizon, and Radnor and Comcast stipulate further requirements in the operation of RS21;

" 6.2.1 Franchisee shall provide a quarterly grant to the Township to be used in support of the production of local PEG programming (the "PEG Grant"). <u>Such grant shall be used by the Township for PEG access equipment, including, but not limited to, studio and portable production equipment, **editing equipment** and program playback equipment, or for renovation or construction of PEG access facilities.</u>  (boldface and underlining added)

Note that **editing equipment** is specified as a core element that RS21 must provide to the public at its Public Access TV studio.

26   Despite these explicit terms,  in 2014, the defendants worked together to

7

institute a new policy disenfranchising the plaintiff and the public from these editing services.

27    The policy change was acknowledged in an email sent to Mr. Egli

by RS21 Operations manager Brian Farrell:


[Radnor Studio 21
Add to contacts
7/28/14


To: Christopher Egli

Hi Chris,
Thank you for your email and I hope you had a nice weekend.

To answer your questions, the editing suit (sic) is only for staff and interns (high school and college students for credit with staff supervision) and **this policy is permanent**.  (boldface added, spelling error noted)

Since October 20th, 2014,  RS21's website has made no mention of the changes,

which to this day falsely and dishonestly invites residents to:


"use our studio facilities, our remote camera/lighting packages, **and our editing equipment** to produce their shows".  (boldface added)


28    The unlawful policy directive violates the terms of the Franchise

Agreement between Radnor Township and Verizon Pennsylvania,

and between Radnor and Comcast.  It disenfranchises the plaintiff, denying him

and the public the use of editing equipment that RS21 is required to provide.

Regardless the terms of the settlement agreement or any other secondary

arrangements, RS21 is legally obligated to make editing services available,  and

the plaintiff is legally entitled to demand that the franchise agreement terms be

8

honored.

29   The franchise agreement also specifies that RS21 must follow an 'open

access' policy.  To that end, the agreement specifies that 80% of the monies

received from Comcast and Verizon will be paid to RS21 to *further the purposes*

*of Public Access:*

"6.2.3 *Township Responsibilities with Respect to PEG Grant*: The Township
agrees that twenty percent (20%) of the grants provided for in this Section 6.2
will be used by the Township to further the purposes of the Government Access
Channel(s) and that eighty percent (80%) of such grants will be paid to Radnor
Studio 21, Inc., (or any successor certified public access channel operator) **to
further the purposes of public access**. The Township shall provide
Franchisee with a complete accounting annually of the distribution of funds
granted pursuant to this Section 6.2.  (boldface added)"

30   Despite these mandated objectives,  RS21 has not purchased a new digital

camera nor a new computer with up-to-date editing software - specifically for the

use of RS21 producers - in more than ten years.

Rather than devote RS21 to local producers' programs, the daily schedule of RS21

reserves its evening hours to showing old movies that are in the public domain.

These films take up the 'prime time' slot at RS21 *every night of the week,*

*including weekends*.

Public Access TV was created as a public forum for local producers, not a

junkyard channel to rebroadcast old black and white movies.  Nevertheless, this

policy has been in effect for many years, and the policy has been known and

enforced by both RS21 and Radnor township. As both a viewer and a participant,

the plaintiff is being denied the legally mandated purpose of this public access

9

television station.

31    The rights of this plaintiff and local residents, established by the Franchise agreement, the Cable Communications Act of 1984, 47 U.S.C. § 531 and 42 USC 1983 are all being violated as a result of current policy.

## DEFAMATION

32    As noted earlier, defendant Jack Brooks sent a letter via RS21's attorney on June 7th, 2016, regarding the plaintiff's effort to submit a new film for airing on RS21. In that letter, Brooks writes that RS21 has "revoked all [your] privileges at RS21." Brooks adds that the plaintiff "may not have contact with any RS21 staff", and that "further contact will be considered harassment". Brooks then declares that the plaintiff may not "be on the property of RS21", and that "any appearance by you on our private property at any time will be considered both a threat and criminal trespassing."

Brooks adds, "We have already notified [the Radnor Police Department ] and we will pursue all legal action available to us."

33    This letter is libelous, falsely describing the plaintiff as a 'threat', falsely creating the impression that the plaintiff is a danger to RS21 employees, and insinuating that he has 'criminal' intent. The sole basis for these claims is an unsubstantiated, undocumented accusation that the plaintiff did not follow proper procedures for submitting a film, some time in the past. The plaintiff never received a notice of any kind alleging that he had followed procedures improperly, prior to May 29th, when he dropped off his film at RS21. That

10

accusation was conjured up only after the plaintiff submitted his new film to RS21.

34   As chairman of the RS21 Board of Directors, Brooks certainly showed or copied his letter to RS21 general manager George Strimel, certainly showed or copied it to the other members of the RS21 Board of Directors, surely informed RS21 employees Brian Farrell and Giulia Hedley of its contents, and in 'notifying' the Radnor police, made his false accusations known to hundreds of other individuals. Most notably, the letter was copied to the Honorable Judge Wendy Beetlestone in Philadelphia federal court, with the intention of smearing the plaintiff's name there as well.


## Intentional Infliction of Emotional Distress

35   For nearly four years now, the defendants at RS21 have refused to air the plaintiff's films, refused to discuss the issues of concern, and refused to negotiate in good faith. The defendants have engaged in deceitful, damaging actions harmful to Mr. Egli's career as a filmmaker, not only refusing to air his films, but repeatedly acting in bad faith, showing nothing but contempt for his efforts to exercise his 1st amendment rights. Throughout much of 2012, 2013 and 2014, the plaintiff endured an unending succession of deceit, dishonesty and delays, costing him time and energy in the effort to get his films aired on RS21. Among other hostile acts, GM Strimel targeted the plaintiff for personal harassment, accosting him at a public meeting on July 28th, 2014 and demanding that the plaintiff find a Radnor 'sponsor' if he hoped to continue participation at RS21. This demand was

11

made of no other RS21 producer, but was purely an attempt to harass this plaintiff.

36   In cooperation with the chairman of RS21's Board of Directors, Strimel and RS21 have now publicly blacklisted the plaintiff in retaliation for a single effort to continue submitting films for airing on RS21.  The defendants accuse the plaintiff of being a 'threat', and imply he was a danger to RS21 staff, an outrageous and libelous accusation that they spread to RS21 employees, the Radnor Police department, and Judge Wendy Beetlestone of Philadelphia federal court. The cumulative effect of this hostility and bad faith has been to cause serious and continuing distress to this plaintiff.

## A REVIEW OF THIS COURT'S OPINIONS IN THIS MATTER

37   There have been several judges assigned to the plaintiff's Complaints over the past three years. The matter was first assigned to the Honorable Paul S. Diamond, then to the Honorable Judge L Philipe Restrepo,  then to the Honorable Judge Elizabeth Hey, and finally to the Honorable Judge Wendy Beetlestone.

38   The plaintiff will offer a brief recapitulation of this court's decisions regarding the plaintiff's cases, showing that he made substantial headway in establishing, through documents and testimony, that Strimel and RS21 are 'state actors', as claimed.

39   The litigation began when plaintiff Egli filed a Complaint against these defendants in March of 2013, alleging similar, but separate,

12

violations of 42 USC 1983. That case was settled in November of 2013, adjudicated by the Honorable Timothy Rice.

40    The plaintiff filed his second Complaint when Strimel and RS21 resumed blocking his films just weeks after that agreement was reached. The Honorable Judge L. Philipe Restrepo examined the 'state actor' issue, ruling on August 28th, 2015, that the plaintiff had provided a plausible cause of action. Judge Restrepo also examined the 'public forum' issue, again finding in the plaintiff's favor and setting a date for trial.

41    The case was then briefly transferred to Honorable Judge Elizabeth Hey, and then to the Honorable Wendy Beetlestone. There, the plaintiff defeated a much more difficult challenge, arguing successfully against a "<u>Motion for Summary Judgment</u>".

42    On April 8th, 2016,  not long before the scheduled trial date,  Judge Beetlestone filed a "<u>Memorandum Opinion</u>" regarding the '<u>Motion for Summary Judgment</u>." In her Opinion, Judge Beetlestone again addressed the 'state actor' issue; Judge Beetlestone cited "<u>Lebron v. Nat'l RR Passenger Corp, 513 US 374 (1995)</u>, noting the three conditions determining the 'state actor' issue, and wrote,

43    "*Plaintiff here has pointed to evidence that raises a genuine dispute of material fact for each of the Lebron factors.*"

Judge Beetlestone cited directly from Radnor township's Franchise agreement with Comcast in her ruling;

"*Township shall have <u>complete control</u>' over the content, scheduling, and*

13

*administration of the PEG channels," [which includes RS21.]"*

Judge Beetlestone also observed; *"The agreements further specify that the township's "Public Access TV channel" is RS21."*

44   As both a legal and a practical matter, Judge Beetlestone's Opinion would appear to support this plaintiffs' arguments regarding the 'state actor' issue. Judge Beetlestone specifically links Radnor township to RS21, citing the Franchise agreements between Radnor township and its two cable companies. She writes;

45   "Both the Verizon Agreement and the Comcast Agreement require that the cable companies "provide capacity" on their channel for three "dedicated Channels for Public Access, Educational Access, and Government Access television (collectively "PEG" Channels")" for the Township's use. JA 186-405. The Agreements further specify that the Township's "Public Access Channel" is RS21. JA 187, 407. Although these Agreements do not explain the precise relationship between the Township and RS21, it is apparent that RS21 is funded, at least in part, via the Township's agreements with Verizon and Comcast."

46   The recognition that RS21 is funded by Radnor township is an important, if not critical, factor in the 'state actor' issue. It should also be considered determinative relative to the other counts the plaintiff has alleged earlier in this Complaint.

47   Further along, Judge Beetlestone cites from a decisive ruling in a case of nearly the exact same type; a franchise agreement between another township and

14

Public Access TV station, this one located in Athol, Massachusetts. The
Athol/Orange County TV agreement is essentially the same as the one between
Radnor and RS21. Judge Beetlestone referred to that case:

48    "See "Demarest v. Athol/Orange County Television, Inc., 188 F. Supp 2nd 82
(D Mass 2002)
(finding that the plaintiff satisfied the first Lebron factor with respect to PEG
channel because "[the cable company's] contribution to [the PEG] functions
much like a tax or licensing fee.")

49    This part of Judge Beetlestone's Opinion appears to acknowledge the basis of
the plaintiff's assertion that RS21 and its general manager are 'state actors', just
as were the litigants in the "Demarest v Athol" case, with both PA stations being
funded through 'taxes'. Judge Beetlestone's citations from the "Demarest v.
Athol" case demonstrate the similarities between the two cases, and the
"Demarest v. Athol" case itself repeatedly draws on rulings by the United States'
Supreme court. The case law is well-established and is at least provisionally
affirmed by this court.

50    The plaintiff would note one other minor point, if he may; that the Lebron
language itself is hardly definitive on the third criteria determining 'state actor'.
Lebron states that the township in question must "*retain for itself* the authority"
[to appoint Board members] - which is not the same as *actually* appointing such
a Board. Most etymologists would be perplexed to find anyone arguing that

15

"complete control" leaves room for discussion on that question.

51   The plaintiff asks this court to note, as well, that nowhere in any of the rulings by the four judges issuing Opinions related to the plaintiff's Complaints, was there a single instance of any count being dismissed 'with prejudice', suggesting that the plaintiff's allegations in his two previous lawsuits were, at the very least, reasonable and credible.

52   The outcome of the plaintiff's 2014 Complaint was decided on procedural errors.  The plaintiff had fully established the framework for demonstrating that Strimel and RS21 were 'state actors';  it was only because of his unfamiliarity with the procedures for properly introducing exhibits and evidence that the trial ended prematurely.

Regardless, that outcome has no bearing on the right of the plaintiff to return to court to challenge the new, separate violations of his 1st amendment rights, as well as to bring his other counts.

---

### REMEDY

The Plaintiff seeks $250,000 in compensatory damages as penalty for the unlawful deprivation of his First Amendment rights, intentional public humiliation, and subjecting him to sustained angst and emotional distress.

16

## Request for Sanctions

Plaintiff asks that the RS21 attorney Dan Strick be sanctioned for allowing his client, RS21 Board of Directors chairman Brooks, to make false, unsubstantiated accusations in a letter CC'd to the Honorable Judge Wendy Beetlestone, allegations he knew to be false and defamatory.

Dated

June 23, 2016

Respectfully submitted,

Christopher Egli,  Pro Se

17

**RADNOR STUDIO 21, INC.**
**REQUEST FOR PLAYBACK FORM**

Date:_____          Producer:_____

Title of Show or Series:

Address:

_____ Producer to initial here if this Request and Agreement is intended to apply to all programs submitted by this Producer to Radnor Studio 21 (If not checked a separate form must accompany all programs submitted by this Producer). **The Producer understands there is no guaranty content submitted pursuant to this Request for Playback Form will be broadcast on Radnor Studio 21. The Producer also understands and agrees, Radnor Studio 21 maintains and reserves the right to exercise editorial discretion over content submitted for playback on Radnor Studio 21. Radnor Studio 21 can refuse to broadcast content submitted under this Request for Playback Form for any reason. If the Producer believes the submitted content was wrongfully withheld from broadcast on Radnor Studio 21, the Producer agrees to follow the procedures set forth in the Conflict Resolution Policy before filing suit against Radnor Studio 21. In the event the Producer files suit against Radnor Studio 21 and/or any of its employees, in the event Radnor Studio 21 or its employees is successful in said lawsuit, the Producer agrees all of Radnor Studio 21 Inc.'s legal fees and costs incurred in defending the lawsuit.**          To pay?

The undersigned hereby requests Radnor Studio 21, Inc. to consider the above named Show or Series for playback on its channel primarily serving Radnor Township, The Township of Lower Merion and the Borough of Narberth, Pennsylvania. In consideration of Radnor Studio 21, Inc.'s undertaking to do so, the undersigned hereby agrees and guarantees the ability to indemnify, defend and hold Radnor Studio 21, Inc., Radnor Township, The Township of Lower Merion and the Borough of Narberth, Pennsylvania, Comcast of Pennsylvania, LLC., Verizon Pennsylvania, Inc. and their respective officers, directors and employees harmless from and against any and all liability arising from the telecast of the above described program (and all other programs submitted by the undersigned to Radnor Studio 21, if applicable), including without limitation, any actions or suits on account of defamation, copyright infringement or invasion of privacy. The undersigned represents and warrants that to the best of the knowledge, information and belief of the undersigned, this program contains no illegal material, including, but not limited to:

A.     Unlawful use of copyrighted material;

B.     Advertising material that promotes a commercial product or service (other than sponsor acknowledgments in accordance with the Policies and Procedures of Radnor Studio 21, Inc.)



**RADNOR STUDIO 21**

110 W. Lancaster Avenue
Wayne, PA 19087

610.687.5189
Fax: 610.964.9093

June 7, 2016

Mr. Christopher Egli
147 Conestoga Road
Devon, PA  19333

Dear Mr. Egli

On June 6, 2013 Radnor Studio 21 attorney Dan Strick sent you an email regarding your status and access to Radnor Studio 21. This email was at the request of the Board of Directors of RS21 who continue to engage Mr. Strick to represent us. This was in response to your recent delivery of a program for playback consideration.

The Board of Director's revised our Request for Playback form during a Board Meeting on May 19. This was prior to your submission. The Board requested Mr. Strick send you the current form and you acknowledge receipt of it. Your program will not be considered until this is signed and returned directly to Mr. Strick. As you well know, Radnor Studio 21 is not a state actor.  Therefore, any refusal to broadcast your material is not a violation of your First Amendment rights, as the First Amendment does not apply to Radnor Studio 21.

Mr. Strick has forwarded your email reply regarding this issue and your request for another copy of the Radnor Studio 21 "Conflict Resolution Policy". I have instructed the staff to send you the policy by registered mail to the current address we have on file for you. I witnessed you referencing the policy during your recent Federal Court case against Radnor Studio 21 and know you are familiar with the policy and the procedures contained within the document. Please review the policy, if you wish to initiate a complaint pursuant to the policy please notify Mr. Strick and he will send your complaint to the RS21 Board of Directors for Review.

You and the Board of Directors of Radnor Studio 21 have been advised by our attorney that through your actions you have violated the terms of our November 20, 2013 "Settlement Agreement and General Release". As stated in the agreement, you received Consideration in the sum of $12,500.00. In return we agreed to certain conditions


regarding playback of your programs. The Board of Directors now considers your actions to have voided this this contractual Settlement Agreement and we consider the Studio released of any further obligation to you.

The Board of Directors of Radnor Studio 21 hereby notifies you as of 6-7-16:

- We have revoked all your privileges at Radnor Studio 21.

- You are not to have any further contact with the staff or employees of Radnor Studio 21. Further direct contact in person, by phone, by email or studio visit will be considered harassment.

- You are to have no further contact with the Radnor Studio 21 Board of Directors. Further direct contact in person by phone by email or studio visit will be considered harassment.

- You are not to be on the property of Radnor Studio 21. Any appearance by you on our private property at any time will be considered both a threat and criminal trespassing.

You do not need to contact the Radnor Township Police Department, we already have notified them and we will pursue all legal action available to us.

If you need to communicate to us you may do so through our attorney Dan Strick.

Jack Brooks
Chairman
Radnor Studio 21

cc: The Honorable Wendy Beetlestone.

EXHIBIT C + D

*C*

From "Citizenaudit" IRS filing   Note that the address provided here is that of
Radnor township, not the RS21 studio.

**Basic info - 2013**

| | | | |
|---|---|---|---|
| **EIN** | 233024946 | **Name** | RADNOR STUDIO 21 INC |
| **Contact** | | **Address** | 301 IVEN AVE |
| **City** | WAYNE | **State** | PA |
| **Zip** | 19087-5204 | **Ruling date** | 200106 |
| **Tax period** | 201212 | **Assets** | 66,707 |
| **Income** | 180,170 | **Revenue** | 180,170 |

*D*

Links page from "501c3Lookup" website.  Note the addresses provided here are
again that of Radnor township, not RS21 studio.

### EXTERNAL LINKS FOR "RADNOR STUDIO 21 INC"

- Radnor Studio 21 Inc in Wayne, Pennsylvania (PA ...- Radnor Studio 21
  Inc: Employer Identification Number (EIN) 233024946: Name of
  Organization: Radnor Studio 21 Inc: Address: 301 Iven Ave, Wayne, PA
  19087-5204
- NCCS Organization Profile - Radnor Studio 21 Inc (233024946)-
  Organization Details; EIN: 233024946: Name: Radnor Studio 21 Inc --
  Google: Location: 301 Iven Ave Wayne, PA 19087 Report Address Change
- 501(c)(3) Lookup: RADNOR STUDIO 21 INC- 501(c)(3) Information for
  RADNOR STUDIO 21 INC of WAYNE, Pennsylvania. Television.
- RADNOR STUDIO 21 INC - Razoo- RADNOR STUDIO 21 INC. Address.
  301 IVEN AVE WAYNE, PA 19087. EIN. 233024946. Reports. Guidestar $
  (min $10) Make This Donation Occur ...
- Radnor Studio 21 in Wayne, PA 19087-4059 - FindTheBest- Radnor Studio
  21 is a television broadcasting station located in Wayne, ... Tax EIN:
  233024946 Subsection Code: 3 Analysis of Revenue and Expenses (2011)