# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| CHRISTOPHER EGLI, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 16-3693 |
| | : | |
| GEORGE STRIMEL, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                                **April 25, 2017**

Before the Court is the motion for summary judgment of Defendants John C. Brooks, George Strimel, and Radnor Studio 21, Inc. ("RS21"). Also before the Court is *pro se* Plaintiff Christopher Egli's motion to dismiss and/or for summary judgment, which seeks dismissal of Defendants' counterclaims. For the reasons that follow, both motions will be granted.

## I. BACKGROUND

Plaintiff is a filmmaker, and this dispute concerns the refusal of RS21, a public access television station in Radnor Township, Pennsylvania, to air his 2016 film *Americans Risking Everything*. Plaintiff alleges that RS21's refusal violated his First Amendment rights, and asserts claims under several legal theories against RS21, Mr. Strimel (RS21's general manager), and Mr. Brooks (the chairman of RS21's board of directors).[1] This is Plaintiff's third lawsuit against RS21 and Mr. Strimel asserting similar claims; Mr. Brooks was not named as a Defendant in the previous lawsuits. Because all three Defendants have moved for summary judgment on *res judicata* grounds, discussion of Plaintiff's prior lawsuits is warranted.

Plaintiff first filed a *pro se* lawsuit against RS21 and Mr. Strimel in 2013 ("*Egli I*")

---

[1] Because Plaintiff is *pro se*, his arguments are construed liberally. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). While most of the material facts are undisputed, the facts are interpreted in the light most favorable to the non-moving party or parties.

alleging that RS21 had refused to air his film *My Adventure in Tredyffrin Township* in violation of his First Amendment rights. *Egli I* was assigned to the calendar of the Honorable Paul S. Diamond,[2] and resulted in a settlement agreement whereby Defendants paid Plaintiff and agreed that Plaintiff could continue to submit content to RS21 for consideration.[3]

Plaintiff filed a second *pro se* lawsuit ("*Egli II*") in 2014 concerning RS21's refusal to air several of his other works, including films entitled *Deconstructing the Israel Test* and *Dog*.[4] That case was assigned to the calendar of the Honorable L. Felipe Restrepo, and Defendants moved to dismiss. Among other things, Defendants argued that they were not state actors and therefore could not violate Plaintiff's First Amendment rights.[5] Judge Restrepo granted Defendants' motion as to all of Plaintiff's claims except for his First Amendment claim, holding that factual disputes existed concerning whether Defendants were state actors.[6]

The case was then re-assigned to the calendar of the Honorable Wendy Beetlestone, and Defendants moved for summary judgment on the ground that they were not state actors. Judge Beetlestone found that material factual disputes still existed and denied the motion. The case then proceeded to trial, at which Plaintiff was unable to establish that Defendants were state actors, prompting Defendants to move for judgment as a matter of law at the close of Plaintiff's case. Judge Beetlestone granted the motion and entered judgment in favor of Defendants.[7] Plaintiff did not appeal that decision.

---

[2] *Egli v. Strimel*, Civil Action No. 13-123 (E.D. Pa.).

[3] Summary Judgment Appendix ("SJ App.") at 93-96; Doc. No. 1 (Complaint) ¶ 16.

[4] *Egli v. Strimel*, Civil Action No. 14-6204 (E.D. Pa.).

[5] *See, e.g.*, *Egli v. Strimel*, Civil Action No. 14-6204, 2016 WL 1392254, at *1 (E.D. Pa. Apr. 8, 2016) (Beetlestone, J.) ("*Egli II*") ("First Amendment protections are triggered only against defendants who act 'under color of state law.'") (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

[6] *Egli II*, Civil Action No. 14-6204, 2015 WL 5093048, at *7 (E.D. Pa. Aug. 28, 2015) (Restrepo, J.).

[7] *Egli II*, 14-cv-6204, Doc. No. 90.

After the trial, RS21 revised its "request-for-playback" form, which producers such as Plaintiff were required to sign before submitting material for consideration. The revised form stated that RS21 was not a state actor and required producers to pay RS21's legal fees and costs in the event of a lawsuit.[8]

In May 2016, after RS21 adopted the revised form, Plaintiff went to RS21 to submit *Americans Risking Everything* for playback, but was presented with and signed an older version of the form.[9] On June 6, 2016, Plaintiff received an email from Defendants' counsel requesting that he complete the revised form.[10] Plaintiff refused, and emailed back stating, in effect, that he was entitled to submit content to RS21 and that if he went to RS21 and "encounter[ed] any resistance or interference," he would "call the police."[11]

The next day, Mr. Brooks informed Plaintiff by letter that his privileges at RS21 had been revoked.[12] The letter also informed Plaintiff that "any appearance" by him at RS21 would be considered "both a threat and criminal trespassing," and that the Radnor Township Police Department had been informed of the situation.[13] Judge Beetlestone was copied on the letter.

On June 28, 2016, Plaintiff filed this lawsuit alleging several claims, of which three remain: (1) violation of First Amendment Rights under 42 U.S.C. § 1983; (2) civil conspiracy and false advertising; and (3) defamation.[14] Defendants answered the Complaint and asserted five counterclaims: (1) abuse of process; (2) wrongful use of civil proceedings; (3) declaration

---

[8] SJ App. at 53.

[9] *Id.* at 62-64.

[10] *Id.* at 62.

[11] *Id.* at 87.

[12] *Id.* at 87-88.

[13] *Id.*

[14] Doc. No. 1. Plaintiff originally asserted claims against Radnor Township as well, but those claims were dismissed. Doc. Nos. 19, 21, 30. Plaintiff also asserted a claim for intentional infliction of emotional distress, which he withdrew as well. Doc. No. 21.

that RS21 is not a state actor; (4) declaration that Mr. Strimel and Mr. Brooks are not state actors; and (5) injunction prohibiting future filing.[15]

Defendants then filed a motion for judgment on the pleadings, which was denied without a written opinion.[16] While that motion was pending, Plaintiff moved to dismiss and/or for summary judgment on Defendants' counterclaims.[17] Defendants then moved for summary judgment on all of Plaintiff's claims.[18] While both parties' motions were pending, the case was reassigned to this Court.

## II. LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[19] A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[21] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[23]

---

[15] Doc. No. 4.

[16] Doc. Nos. 23, 43.

[17] Doc. No. 26.

[18] Doc. No. 38.

[19] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[20] Fed. R. Civ. P. 56(a).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[22] *Id.*

[23] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Further, a court may not weigh the evidence or make credibility determinations.[24] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[25] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[26] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[27]

## III. DISCUSSION

### A. Plaintiff's First Amendment Claim

Defendants argue that the final judgment in *Egli II* bars Plaintiff's claim under the doctrine of *res judicata*.[28] The Court agrees.

*Res judicata*, or claim preclusion, "bars suit when three elements are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."[29] "The purpose of *res judicata* is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

---

[24] *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[26] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[27] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[28] Plaintiff asserts a First Amendment claim under both § 1983 and § 531(e) of the Cable Communications Act, but the claim is barred by *res judicata* regardless of the legal theory.

[29] *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)) (internal quotation marks omitted).

Defendants assume that Pennsylvania law governs the Court's *res judicata* analysis, but that is incorrect. *Egli II* was a federal-court judgment, so its preclusive effect is "determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-508 (2001)). Nonetheless, the outcome would be the same regardless of which law the Court applied. *See, e.g.*, *Lubrizol*, 929 F.2d at 962-63 (declining to address choice-of-law issue in diversity jurisdiction case because both federal and Pennsylvania *res judicata* principles dictated the same outcome).

5

preventing inconsistent decisions, encourage reliance on adjudication."[30] In determining whether *res judicata* applies, courts "do not proceed mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit. In so doing, we avoid piecemeal litigation and conserve judicial resources."[31]

### 1. Final Judgment on the Merits

The order granting Defendants' motion for judgment as a matter of law in *Egli II* was certainly "final," as it resulted in judgment being entered in favor of Defendants on all claims. Plaintiff suggests that it was not a judgment "on the merits," however, because it held only that Plaintiff failed to prove that Defendants were state actors, and did not reach the merits of his claim. Plaintiff seeks to avoid the preclusive effect of this judgment by arguing that this failure resulted from his inexperience with trial procedure, not from any deficiency with his claim, and thus requests a second chance to prove his case.[32] This argument is not persuasive.

The order was a final judgment "on the merits" because it was entered after Plaintiff had a full and fair opportunity to prove his case and failed to do so.[33] Even if the ruling resulted from Plaintiff's inexperience, that is irrelevant, as "technical" or "procedural" rulings arguably

---

[30] *Davis*, 824 F.3d at 341-42 (quoting *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013)) (internal quotation marks omitted); *see also Montana v. United States*, 440 U.S. 147, 153-54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (citations omitted).

[31] *Id.* at 341 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)) (internal quotation marks omitted).

[32] Doc. No. 39 (Plaintiff's Opposition to Defendants' Motion for Summary Judgment) at 5 ("Plaintiff has made clear that it was his inexperience and unfamiliarity with trial procedures that led to the courts' [sic] decision to end the trial.").

[33] *See Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013) ("*Res judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim.") (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

unrelated to the "merits" of a claim are routinely afforded preclusive effect.[34] And importantly, *Egli II* was not decided on a procedural issue unrelated to Plaintiff's alleged First Amendment violation; rather, Plaintiff failed to show that Defendants were state actors—a threshold issue for his claim.[35] To deny preclusive effect to the order in *Egli II* would allow Plaintiff to re-litigate his claim despite his earlier failure to prove his case at trial after being afforded a full opportunity to do so, and would encourage precisely the type of piecemeal litigation that *res judicata* is designed to prevent.[36]

### 2. Same Parties or their Privies

The "same parties" requirement is satisfied as to RS21 and Mr. Strimel, who were both named in *Egli II*. Mr. Brooks, however, must be in privity with one of the other Defendants for *res judicata* to bar Plaintiff's First Amendment claim against him.[37] "Privity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the *res judicata*."[38] A "pre-existing substantive legal relationship[] between the person to be bound and a party to the judgment" may establish

---

[34] *See, e.g.*, *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (dismissal with prejudice for failure to comply with statute of limitations was a final judgment on the merits even though it prevented plaintiff from fully presenting claim); *Fatiregun v. City of Philadelphia*, Civil Action No. 09-601, 2009 WL 3172766, at *3 (E.D. Pa. 2009) (explaining that "even a 'technical ruling' can be accorded *res judicata* effect," and finding that dismissal with prejudice on technical grounds was a "final judgment on the merits" for *res judicata* purposes); *see also Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 147 & n.19 (D. Conn. 2005) (court's order granting judgment as a matter of law was entitled to preclusive effect despite the fact that plaintiff was *pro se* and argued that his loss at trial was on "technical procedural grounds" rather than the merits).

[35] *Compare Wade v. City of Pittsburgh*, 765 F.2d 405, 410-11 (3d Cir. 1985) (state-court order granting summary judgment on the basis of statutory immunity was not a final judgment "on the merits" because it had no bearing on defendant's liability or the substance of plaintiff's claim).

[36] *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 157-58 (3d Cir. 2001) ("[R]es judicata or claim preclusion is designed to avoid piecemeal litigation of claims arising from the same events.").

[37] Plaintiff's Complaint appeared only to assert a First Amendment claim against RS21 and Mr. Strimel, but Plaintiff later clarified that he intended to name Mr. Brooks as a Defendant for all claims. Doc. No. 41 (Plaintiff's Enumerated Responses to Defendants' Motion for Summary Judgment) at 8.

[38] *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)).

privity.³⁹ Such a relationship exists between RS21 and Mr. Brooks, who served as RS21's chairman during *Egli II*; it is Mr. Brooks' relationship with RS21 that provides the basis for Plaintiff's claims against him. This relationship sufficiently aligned the interests of Mr. Brooks and RS21 to place them in privity for *res judicata* purposes.⁴⁰

### 3. Same Cause of Action

Defendants argue that Plaintiff's present First Amendment claim is the same cause of action as the First Amendment claim in *Egli II* because both claims allege the same pattern of alleged constitutional deprivations. Plaintiff responds that the claims are different primarily because they involve different films.

Courts in the Third Circuit "take a broad view of what constitutes the same cause of action and [] *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims."⁴¹ "In analyzing essential similarity," courts "consider several factors: (1) whether the acts complained of and the demand for relief are the same . . .; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . .; and (4) whether the material facts alleged are the same. It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions."⁴² "Further, [t]he fact that several new and discrete [] events are alleged does not compel a different result. A claim extinguished by *res judicata* includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, *or*

---

³⁹ *Taylor*, 553 U.S. at 894.

⁴⁰ *Radovich v. L.P. YA Glob. Invs., L.P.*, 570 F. App'x 203, 207-208 (3d Cir. 2014) (chairman of company was bound by judgment involving company because their interests were "sufficiently aligned"); *see also Waris v. Mackey*, Civil Action No. 09-1103 (RBK), 2009 WL 4884204, at *8 (E.D. Pa. Dec. 15, 2009) (company was in privity with its board of directors for *res judicata* purposes).

⁴¹ *Blunt*, 767 F.3d at 277 (citations and internal quotation marks omitted)).

⁴² *Id.* (citations and internal quotation marks omitted).

*series of connected transactions*, out of which the action arose."⁴³

Plaintiff's First Amendment claim is the same cause of action asserted in *Egli II* because both claims allege the same harm: RS21's continuing practice of refusing to air Plaintiff's films. Although there are superficial differences between the claims, Plaintiff's filings make clear that they concern the same pattern of alleged First Amendment violations, the same theory of recovery, and the same material facts. In Plaintiff's own words: "[P]laintiff's Complaints involve the same parties and the same 1ˢᵗ amendment issues . . . they show a continuing pattern of unlawful actions on the part of state actors Strimel and RS21."⁴⁴ According to Plaintiff, both Complaints concern "a continuing pattern of animosity and bad faith aimed at [] plaintiff since 2013."⁴⁵ One of Plaintiff's briefs further explains: "The circumstances and issues have not changed; RS21 has simply repeated its unlawful actions yet again."⁴⁶ And Plaintiff admitted at his deposition that the crux of both this case and *Egli II* is "whether or not [Defendants] violated [his] First Amendment rights."⁴⁷ Plaintiff's First Amendment claim is thus the same cause of action asserted in *Egli II* because they both concern the same pattern of alleged wrongdoing and seek the same remedy—the airing of Plaintiff's films on RS21.⁴⁸

The witnesses and documentation required in both cases are also virtually identical, and

---

⁴³ *Id.* (citations and internal quotation marks omitted).

⁴⁴ Doc. No. 1 ¶ 17.

⁴⁵ *Id.* ¶ 14.

⁴⁶ Doc. No. 11 (Plaintiff's Response to Radnor Township's Motion to Dismiss) at 2.

⁴⁷ SJ App. at 121 (Egli Dep. Tr. at 95:4-24); *see also id.* at 107 (Egli Dep. Tr. at 39:14-15) ("I brought the lawsuit because I want to have my films aired on RS21.").

⁴⁸ *See Foster v. Denenberg*, 616 F. App'x 472, 474-475 (3d Cir. 2015) (affirming dismissal of RICO claim on *res judicata* grounds where lawsuit alleged a "continuation of the same fraudulent activity at issue in the prior action"); *Sims v. Viacom, Inc.*, 544 F. App'x 99, 102 (3d Cir. 2013) (affirming dismissal of claim alleging that seasons of defendant's shows "Charm School" and "From G's to Gents" infringed on Plaintiff's show "Ghetto Fabulous" where plaintiff had already brought similar claims regarding prior seasons of "Charm School"); *see also Williams v. Lehigh Cty. Dep't of Corrs.*, 19 F. Supp. 2d 409, 412-413 (E.D. Pa. 1998) (dismissing prisoner's § 1983 claim alleging abuse by guards on *res judicata* grounds because it was identical to a claim resolved in a previous lawsuit except for the addition of an alleged threat that occurred after the resolution of the first lawsuit).

largely concern Defendants' status as state actors. In fact, Plaintiff testified at his deposition that if this lawsuit proceeds to trial, his case will mostly consist of presenting the same evidence used in *Egli II*. For example, Plaintiff plans to question Mr. Strimel regarding RS21's status as a state actor—a line of questioning he pursued in *Egli II*.[49] Plaintiff also seeks to introduce the documents he presented in *Egli II* (some of which were not admitted), including a 2002 decision from the District of Massachusetts that dealt with the state-actor issue.[50] These witnesses and documents are not unique to *Americans Risking Everything* or any events that transpired after *Egli II*; instead, they are evidence that Plaintiff wishes he had been able to introduce, or use more effectively, during his previous trial.

Plaintiff stresses that this case involves a different film than those at issue in *Egli II*, and notes that *Americans Risking Everything* was allegedly rejected because he failed to complete the correct playback form, whereas the films in *Egli II* were rejected for various other reasons. These distinctions are immaterial, as Plaintiff's claims in both cases concern RS21's alleged practice of refusing to air any of Plaintiff's films that contain political content.[51] Indeed, in both cases, Defendants have relied primarily on the argument that they were not state actors, rather than asserting content-based justifications for rejecting Plaintiff's films. Thus, although RS21's refusals may differ in the details, the cause of action in both cases is the same.

Plaintiff also notes that the submission of *Americans Risking Everything* occurred more than two years after the submission of the films in *Egli II*. But this is not dispositive, as in both

---

[49] SJ App. at 106 (Egli Dep. Tr. at 36:11-37-40:2).

[50] *Id.* at 107 (Egli Dep. Tr. at 38:11-41:3) (citing *Demarest v. Athol/Orange Cmty. Television, Inc.*, 188 F. Supp. 2d 82 (D. Mass. 2002)).

[51] Doc. No. 1 ¶ 13 ("Consistent with their actions beginning in 2012, when Strimel and RS21 refused to air the plaintiff's earlier films, the defendants have used – and abused – their powers as state actors to deny this plaintiff his 1st amendment rights. The reason? Because Mr. Strimel, et al, did not like the political content in the plaintiff's films, and were not about to let him voice his opinions on RS21.").

10

cases, Plaintiff complains of the same harm, and Plaintiff does not explain how Defendants' status as a state actor has changed between *Egli II* and the present case.

Finally, Plaintiff has expressed concern that applying *res judicata* here will allow Defendants to violate the rights of *all* RS21 participants at will.[52] But the Court's ruling has no bearing on the rights of *other* plaintiffs to bring First Amendment claims against RS21; it only prevents Plaintiff (and his privies) from re-litigating the same claim raised in *Egli II*. Summary judgment will be granted in favor of Defendants on Plaintiff's First Amendment claim.[53]

### B. Plaintiff's Civil Conspiracy and False Advertising Claim

Plaintiff alleges that Defendants conspired in 2014 to adopt a policy disenfranchising Plaintiff and the public from using editing equipment at RS21 in violation of Radnor Township's Franchise Agreements with cable operators Verizon and Comcast.[54] The "civil conspiracy," then, is Defendants' agreement to limit the use of RS21's equipment, and the "false advertising" consists of a statement on RS21's website that Radnor Township residents are, in fact, able to use RS21's equipment.[55] However characterized, Plaintiff's claim fails for at least three reasons.

First, Plaintiff's claim is barred by *res judicata* because it is nearly identical to a claim Plaintiff raised in *Egli II*, which was titled "Ongoing Breach of Contract, Fraud, Civil

---

[52] Doc. No. 11 at 2. The Court also notes that Defendant elected not to appeal the final judgment in *Egli II*.

[53] Plaintiff also filed "Enumerated Responses" to Defendants' Motion for Summary Judgment which raised several additional responses to Defendants' *res judicata* argument. Doc. No. 41. These largely consisted of the assertions that Plaintiff had made good-faith efforts to resolve this dispute before filing suit, that Defendants have only themselves to blame for the present lawsuit given their refusal to air Plaintiff's film, and that because Defendants were spared the cost of an appeal in *Egli II*, they should not complain about having to defend against the present lawsuit. Doc. No. 41 at 7-8. None of these considerations are relevant. The issue is not whether Plaintiff acted in good faith or Defendants saved money when Plaintiff chose not to appeal; the issue is whether the claims in both cases are the same. Because they are, *res judicata* bars Plaintiff's claim.

[54] Doc. No. 1 ¶¶ 18-31. The Franchise Agreements govern Radnor Township's relationship with Verizon and Comcast, and the parties have vigorously disputed their significance and meaning throughout Plaintiff's lawsuits.

[55] Plaintiff is admittedly not a resident of Radnor Township. SJ App. at 99 (Egli Dep. Tr. at 6:6-13).

Conspiracy, and Tortious Interference.[56] As explained, *Egli II* resulted in a final judgment on the merits, involved the same parties, and Plaintiff could have (and for the most part did) raise his current claim in that case.[57] The only discernible differences between Plaintiff's current claim and its predecessor in *Egli II* are new allegations about RS21 and Radnor Township's responses to Plaintiff's discovery requests in *Egli II*, and Plaintiff's attempt to re-cast his claim as one for false advertising. But the addition of a few facts that could have been presented in *Egli II* and a new legal theory are insufficient to overcome *res judicata*'s bar, as both causes of action are based on the same underlying events.[58]

Second, Plaintiff fails to identify a legal basis for his claim. Plaintiff identifies three sources of liability: the Franchise Agreements, Section 531(e) of the Cable Communications Act, and § 1983. But neither Plaintiff nor Defendants are parties to the Franchise Agreements, so Plaintiff cannot assert (and Defendants cannot be liable for) a breach of their terms.[59] And Plaintiff cannot assert a claim under Section 531(e) of the Cable Communications Act because that provision provides no private right of action, as at least two courts in this district have held

---

[56] This claim was dismissed by Judge Restrepro for failure to state a claim. *See Egli II*, 2015 WL 5093048, at *5-7 (concluding that Plaintiff failed to state a claim for breach of contract, fraud, civil conspiracy, or tortious interference).

[57] Defendants argue that both Judge Restrepo's Order dismissing Plaintiff's claim and Judge Beetlestone's Order granting Defendants' motion for judgment as a matter of law were "final judgments" for *res judicata* purposes, and the result is the same regardless of which Order was the relevant "final judgment." Judge Restrepo's Order constituted a final judgment on the merits because it did not state that the dismissal of Plaintiff's claims was without prejudice. *See Egli II*, Civil Action No. 14-6204, Doc. No. 19; *see also Foster v. Denenberg*, Civil Action No. 13-4478, 2014 WL 1370116, at *3 (E.D. Pa. Apr. 8, 2014) ("The Supreme Court and the Third Circuit have firmly held that a dismissal pursuant to Rule 12(b)(6) is an adjudication on the merits [for *res judicata* purposes] unless the order specifies that it is without prejudice.") (citations omitted). And as explained above, Judge Beetlestone's Order constituted a final judgment on the merits because it resulted in the entry of judgement in favor of Defendants, and Plaintiff did not appeal that ruling or Judge Restrepo's Order after judgment was entered.

[58] *See Lubrizol*, 929 F.3d at 964 (finding *res judicata* barred claim based on new legal theory where underlying events were the same ones asserted in previous action).

[59] *Egli II*, 2015 WL 5093048, at *5 (explaining that RS21, Mr. Strimel, and Plaintiff are not parties to the Franchise Agreements and dismissing Plaintiff's claim for breach of contract based on those agreements). Plaintiff also is not a third-party beneficiary of the agreements, as there is no evidence the agreements were intended to benefit him, and he does not even reside in Radnor Township. *Id.* at *5 & n.10 (finding Plaintiff is not a third-party beneficiary of the Franchise Agreements).

in cases involving Plaintiff.[60] Finally, § 1983 does not provide a standalone basis for relief in the absence of a violation of Plaintiff's constitutional or federal statutory rights, and as Plaintiff has alleged none here, his claim fails.[61]

Third, even interpreting Plaintiff's claim as a state-law claim for civil conspiracy or false advertising, it fails because Plaintiff has not alleged the necessary elements. A claim for civil conspiracy under Pennsylvania law requires: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."[62] "A claim of civil conspiracy cannot be pled without alleging an underlying tort."[63] "Furthermore, the allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation."[64]

Plaintiff's conspiracy allegations fall short because they boil down to a complaint that RS21 restricts the use of its equipment in a way that is inconsistent with the Franchise Agreements, but they do not suggest RS21 conspired with any other entity for an unlawful purpose. Although Plaintiff plainly disagrees with the way RS21 is run, his allegations are insufficient to ground a claim for civil conspiracy.[65] Similarly, Plaintiff fails to allege the

---

[60] *Id.* at *3 n.5 ("Section 531(e) does not provide for a private right of action to enforce violations"); *Egli v. Comcast of Pa.*, Civil Action No. 03-6231, 2004 WL 2166301, at *1 n.1 (E.D. Pa. Sept. 22, 2004) (Padova, J.) (concluding that "Congress did not intend to create a private right of action for public access users to enforce violations of § 531(e)" and dismissing Plaintiff's claim based on that provision).

[61] *See Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *2 (E.D. Pa. June 30, 2008) ("§ 1983 provides remedies for deprivations of rights established in the Constitution or federal laws," but "does not, by its own terms, create substantive rights.") (citation omitted).

[62] *Egli II*, 2015 WL 5093048, at *6 (quoting *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 262 (3d Cir. 2004)).

[63] *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 405 (E.D. Pa. 2011) (citations omitted).

[64] *Reed v. Harpster*, 506 F. App'x 109, 111 (3d Cir. 2012) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

[65] *See Egli II*, 2015 WL 5093048, at *7 (dismissing Plaintiff's previous civil conspiracy claim because Plaintiff's "broad and conclusory allegations simply lack the factual support necessary to state a claim for civil conspiracy");

elements of false advertising, including a likelihood of injury resulting from a false or deceptive statement.[66] Summary judgment will be entered in favor of Defendants on this claim.

### C. Plaintiff's Defamation Claim

Plaintiff asserts a defamation claim based on the June 7, 2016 letter to Plaintiff and Judge Beetlestone that revoked Plaintiff's access to RS21, arguing that the letter falsely portrayed him as a threat to RS21 employees.[67] Defendants argue that Plaintiff fails to establish the necessary elements of his claim. The Court agrees.

A defamation claim under Pennsylvania law requires:

(1) The defamatory character of the communication;

(2) Its publication by the defendant;

(3) Its application to the plaintiff;

(4) The understanding by the recipient of its defamatory meaning;

(5) The understanding by the recipient of it as intended to be applied to the

---

*see also Ruder*, 790 F. Supp. 2d at 405 (dismissing civil conspiracy claim where plaintiff failed to allege that defendants acted in concert to hatch an unlawful plan).

[66] *See Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 286-288 (E.D. Pa. 2016) (listing elements for false advertising under both Pennsylvania law and dismissing claim for failure to allege any direct injury resulting from allegedly false statement). False advertising claims under federal law have the same requirement, so to the extent Plaintiff intended to assert such a claim, it fails as well. *See id.*

[67] After explaining that Plaintiff had failed to execute the correct request-for-playback form, RS21's view that it was not a state actor, and RS21's belief that Plaintiff had breached the settlement agreement from *Egli I*, the letter stated:

The Board of Directors of Radnor Studio 2 hereby notifies you as of 6-7-16:

- We have revoked all of your privileges at Radnor Studio 21.

- You are not to have any further contact with the staff or employees of Radnor Studio 21. Further direct contact in person, by phone, by email or studio visit will be considered harassment.

- You are to have no further contact with the Radnor Studio 21 Board of Directors. Further direct contact in person by phone by email or studio visit will be considered harassment.

- You are not to be on the property of Radnor Studio 21. Any appearance by you on our private property at any time will be considered both a threat and criminal trespassing.

You do not need to contact the Radnor Township Police Department, we already have notified them and we will pursue all legal action available to us.

SJ App. at 87-88.

plaintiff;

(6) Special harm resulting to the plaintiff from its publication; and

(7) Abuse of a conditionally privileged occasion.[68]

Plaintiff's claim fails for at least two reasons: (1) the letter was not defamatory; and (2) Plaintiff has failed to establish damages.

### 1. The Letter Was Not Defamatory

"Whether a communication is capable of defamatory meaning is a 'threshold issue' to be determined by the court."[69] "The plaintiff bears the burden of making this showing and [i]f the court determines that the challenged publication is not capable of defamatory meaning, there is no basis for the matter to proceed to trial."[70] "In considering whether a statement is capable of defamatory meaning, the court considers whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him."[71] "The statement must be examined in context to determine its likely effect on the reader, and the Court should evaluate the effect it is likely to produce in the minds of the average persons among whom it is intended to circulate." "Furthermore, the statement must do more than merely annoy or embarrass the purported victim."[72]

"Importantly, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law, and [i]n order for an opinion to be deemed capable of defamatory meaning under Pennsylvania law, it must reasonably be understood to imply the

---

[68] *Mallory v. S & S Publishers*, 168 F. Supp. 3d 760, 766-67 (E.D. Pa. 2016) (citing *Joseph v. Scranton Times, L.P.*, 129 A.3d 404, 424 (Pa. 2015)).

[69] *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (quoting *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. Ct. 2010)).

[70] *Id.* (quoting *Kurowski*, 994 A.2d at 617) (internal quotation marks omitted).

[71] *Id.* (citations and internal quotation marks omitted).

[72] *Id.* (citation omitted).

15

existence of undisclosed defamatory facts justifying the opinion."[73] "Truth is an affirmative defense [to defamation] under Pennsylvania law."[74]

The statements in the letter were not defamatory as a matter of law because they were either true or reflected the opinions of Mr. Brooks and RS21 based on facts disclosed in the letter. The letter explained that Plaintiff's film would not be considered for playback until he executed an updated request-for-playback form, and restated RS21's position that it was not a state actor.[75] It also stated RS21's view that Plaintiff had breached the settlement agreement from *Egli I* and considered itself released from any obligations to Plaintiff under that agreement.[76] It then informed Plaintiff that his privileges at RS21 had been revoked, that further contact by Plaintiff with RS21 employees would be considered harassment, and that any appearance by Plaintiff at RS21 would "be considered both a threat and criminal trespassing."[77] The letter concluded by informing Plaintiff that the Radnor Township Police Department had been informed of the situation.[78]

The letter was not sent in a vacuum; it followed one day after Plaintiff sent Defendants' counsel an email accusing RS21 of violating his First Amendment rights and stating: "You have no authority to tell me I can't go to RS21 . . . . I will go there anytime I want and if I encounter any resistance or interference I will call the police."[79] Against this backdrop, the June 7 letter consisted either of true statements (such as that Plaintiff's privileges had been revoked) or

---

[73] *Mallory*, 168 F. Supp. 3d at 768 (quoting *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010)) (alterations and internal quotation marks omitted).

[74] *Tucker v. Fischbein*, 237 F.3d 275, 287 (3d Cir. 2001) (citing 42 Pa. C.S. § 8343(b)(1)).

[75] SJ App. at 87.

[76] *Id.*

[77] *Id.* at 88.

[78] *Id.*

[79] *Id.* at 70-71 (e-mail from Plaintiff to Daniel S. Strick).

opinions (such as that RS21 was not a state actor), none of which are actionable. Although Plaintiff asserts that the letter falsely portrayed him as dangerous, it was Plaintiff who first insisted he had an unfettered right to use RS21's facilities and threatened to involve the police if he encountered "resistance" when doing so. The June 7 letter merely explained that RS21 would view any such actions as harassment or trespassing, and thus reflected Defendants' opinions and cannot ground a defamation claim.[80]

### 2. Plaintiff Has Failed to Establish Damages

Even if the letter were defamatory, Plaintiff has not shown that he suffered any damages. "It is a general rule that defamatory words are not actionable, absent proof of special damage."[81] "Special harm requires proof of a specific monetary or out-of-pocket loss as a result of the defamation."[82] Plaintiff has provided no such proof, and does not even allege in the Complaint that the letter caused him any monetary damages. At Plaintiff's deposition, he was similarly unable to identify any harm he has suffered.[83] Summary judgment will therefore be entered on Plaintiff's defamation claim.[84]

### D. Defendants' Counterclaims

In light of the dismissal of Plaintiff's claims, it is unclear whether Defendants wish to

---

[80] The Court also notes the letter's limited audience—it was addressed to Plaintiff, and Judge Beetlestone was the only person copied. It may never be a good idea to copy a presiding court officer on correspondence, but doing so does not necessarily give rise to a defamation claim.

[81] *Baird v. Dun & Bradstreet*, 285 A.2d 166, 274 (Pa. 1971); *see also* 42 Pa. Cons. Stat. Ann. § 8343. There are exceptions to this general rule, which are known as defamation *per se*, including for statements regarding the commission of a crime. *Baird,* 285 A.2d at 274. That exception does not apply here, as Defendants did not accuse Plaintiff of committing a crime, but rather informed him that any future appearances at RS21 would be considered trespassing.

[82] *Synygy, Inc. v. ZS Assocs.*, 110 F. Supp. 3d 602, 617 (E.D. Pa. 2015) (citations and internal quotation marks omitted).

[83] SJ App. at 119 (Egli Dep. Tr. at 88:14-19).

[84] *See Synygy*, 110 F. Supp. 3d at 618 (granting summary judgment on defamation claim where plaintiff failed to offer direct proof of damages).

pursue their counterclaims for abuse of process and wrongful use of civil proceedings. As currently pleaded, both counterclaims consist mostly of barebones allegations, and as such will be dismissed without prejudice.[85]

Defendants' counterclaims for declaratory judgments that they are not state actors will be dismissed because Plaintiff's First Amendment claim is no longer at issue, and this dispute thus "lacks the immediacy and reality necessary to require a judicial declaration of rights as between the parties."[86] These claims will therefore be dismissed with prejudice.

Finally, Defendants ask the Court to enjoin Plaintiff from initiating further litigation against them. As Defendants acknowledge, this is an extreme request. Although Plaintiff's First Amendment claim is barred by *res judicata*, it was not obviously meritless, and the Court sees no reason to issue a broad injunction against Plaintiff at this time. This counterclaim will thus be dismissed without prejudice.

That said, Plaintiff has now filed three lawsuits against RS21 and its related Defendants, all of which have involved similar claims. While Plaintiff's First Amendment claim made it to trial in *Egli II*, none of his other claims did, and some—such as his claims under Section 531(e) of the Cable Communications Act—have been rejected repeatedly. Plaintiff is reminded that he is bound by Federal Rule of Civil Procedure 11 and may be subject to sanctions for future filings that are frivolous or presented for an improper purpose.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted, as is Plaintiff's motion to dismiss and/or for summary judgment. An appropriate order will follow.

---

[85] *See, e.g.*, *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 309 (3d Cir. 2003) (affirming dismissal of abuse-of-process claim where allegations were too vague and conclusory to sustain such a claim).

[86] *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987) (affirming district court's dismissal of plaintiff's declaratory judgment claim where there was no actual controversy between the parties).

18